

ORIGINAL

⊃ to cr ∪ 1 8

⟨19⟩
9/3/02

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HARRY E. WILLIAMS, JR.,  : CIVIL CASE
                          :
            Plaintiff,    :
                          :
                          : NO. 1:CV 01-0877
      v.                  :
                          : (Judge Rambo)
PENNSYLVANIA TURNPIKE     :
COMMISSION,               :
                          :
            Defendant.    :

**FILED**
HARRISBURG, PA

AUG 3 0 2002

MARY E. D'ANDREA, CLERK
Per_____
          Deputy Clerk

## DEFENDANT PENNSYLVANIA TURNPIKE COMMISSION'S
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, the

Pennsylvania Turnpike Commission (the "Commission"), hereby submits its

Motion for Summary Judgment and avers:

1.  Plaintiff, Harry E. Williams, Jr. ("Plaintiff"), an employee of the

Commission, alleges that he was denied a promotion to a "Duty Officer" position

in retaliation for having supported a former co-employee with respect to the

discrimination claims she brought against the Commission.

2.  There are no genuine issues of material fact.

3.      The Commission is entitled to summary judgment in its favor because Plaintiff cannot establish that the Commission's legitimate nondiscriminatory reasons for selecting others over Plaintiff for the Duty Officer position were pretextual.

4.      Even assuming, *arguendo*, Plaintiff's Complaint survives summary judgment, he is not entitled, as a matter of law, to punitive damages against the Commission under Title VII.

5.      In support of this Motion, the Commission respectfully refers the Court to the accompanying Statement of Material Facts, Memorandum of Law, exhibits and supporting transcripts contained in the Appendix to this Motion.

WHEREFORE, the Pennsylvania Turnpike Commission respectfully requests that this Court grant its Motion for Summary Judgment and enter an Order dismissing Plaintiff's Complaint, with prejudice.

Respectfully submitted,

MARVIN J. WEINBERG, ESQUIRE
JOHN C. ROMEO, ESQUIRE
FOX, ROTHSCHILD, O'BRIEN
  & FRANKEL, LLP
2000 Market Street, Tenth Floor
Philadelphia, PA  19103-3291
(215) 299-2000

Attorneys for Defendant,
Pennsylvania Turnpike Commission

Dated: August 30, 2002

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................ i

I.     SUMMARY OF ARGUMENT ....................................................... 1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ........ 3

III.   ARGUMENT ...................................................................... 4

    A.   The Standard For Summary Judgment ..................................... 4

    B.   Plaintiff Cannot Establish That The Commission's Legitimate,
        Nondiscriminatory Reasons For Not Offering Him A Duty
        Officer Position Were A Pretext For Discrimination .............. 5

        1.   The Commission Did Not Offer Plaintiff the Duty
            Officer Position for Legitimate, Nondiscriminatory
            Reasons ........................................................... 7

            (a)   Plaintiff was not selected for the Duty Office position
                in April 1999 because he lacked leadership skills,
                management and decision-making abilities, and
                computer knowledge ................................... 8

                (i)   Plaintiff's subjective belief is not sufficient
                    to establish intentional discrimination ................ 11

                (ii)  The comments of Ronald Frank are "stray
                    remarks" and should not be given any weight
                    by the Court .......................................... 13

            (b)   Plaintiff was not recommended for the July 1999
                Duty Officer position because the Commission
                never received an application from him .................... 15

            (c)   Plaintiff was not eligible for the Duty Officer
                position in November 2000 because he failed the
                required typing test .................................. 17

C.    Title VII Does Not Permit Punitive Damages Against
The Commission.................................................................... 20

IV.    CONCLUSION    ............................................................. 21

PH1 418256v1 08/30/02

# TABLE OF AUTHORITIES

## CASES

*Acampora v. Konica Bus. Machines, USA, Inc.*, No. 95-CV-3936,
1997 WL 214800 (E.D. Pa. Apr. 22, 1997)............................................. 12

*Billet v. Cigna Corp.*, 940 F.2d 812 (3d Cir. 1991).................................... 3, 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................... 4, 5

*Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509 (3d Cir.
1992)....................................................................................... 13

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994)........................ 6, 7, 11, 12, 19

*Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)........................................ 5

*In re Application of Pa. Turnpike Commission*, 715 A.2d 1219 (Pa.
Commw. 1998) ........................................................................... 20

*Keller v Orix Credit Alliance, Inc.*, 130 F.3d 1101 (3d Cir. 1997) ............. 11

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S.
574 (1986)................................................................................. 4

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)............................ 6

*Miller v. Cigna Corp.*, 47 F.3d 586 (3d Cir. 1995) ........................................ 5

*Poli v. SEPTA, No. Civ. A. 97-6766*, 1998 WL. 405052 (E.D. Pa. July
7, 1998) .................................................................................... 20

*Rand v. Mannesmann Rexroth Corp.,* Civ. A. No. 01-3564,
2002 WL 550396 (E.D. Pa. Apr. 15, 2002)....................................... 13, 14

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) .......... 10

*Sosky v. International Mill Serv., Inc.*, Civ. A. No. 94-2833, 1996 WL
32139 (E.D. Pa. Jan. 25, 1996), <u>aff'd</u>, 103 F.3d 114 (3d Cir. 1996) ....... 13

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ........................................................................ 5, 6, 11

*Waddell v. Small Tube Prod., Inc.*, 799 F.2d 69 (3d Cir. 1986) ..................... 6

*Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir. 1989) .............. 5

## STATUTES

36 P.S. § 652d ................................................................................. 20

42 Pa.C.S. § 102 .............................................................................. 20

42 U.S.C.A. § 1981a(b)(1) ............................................................... 20

## RULES

Local Rule Civil Procedure Rule 56.1 ........................................... 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY E. WILLIAMS, JR., | : | CIVIL CASE |
| | : | |
| Plaintiff, | : | |
| | : | NO. 1:CV 01-0877 |
| v. | : | |
| | : | (Judge Rambo) |
| PENNSYLVANIA TURNPIKE | : | |
| COMMISSION, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT PENNSYLVANIA TURNPIKE COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

## I.    SUMMARY OF ARGUMENT

On May 18, 2001, Plaintiff Harry E. Williams, Jr. ("Plaintiff") filed this

action against the Pennsylvania Turnpike Commission (the "Commission"),

alleging that he was passed over for a management position (the "Duty Officer"

position) based on his gender and in retaliation for having supported one of his

former co-employees who filed discrimination claims against the Commission.

Assuming, *arguendo*, that Plaintiff is able to establish a *prima facie* case of

retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), he still has failed to produce any evidence that the Commission's legitimate nondiscriminatory reasons for its actions were pretextual.

Plaintiff claims that he applied for and was denied the Duty Officer position on three (3) separate occasions.   On the first occasion, Plaintiff was one (1) of five (5) applicants (out of a total of twenty (20) applicants) who met the minimum qualifications for the job, and was given an interview for the position.  After the interviews – which were conducted by three (3) Commission managerial employees – Plaintiff was not offered the position because he lacked leadership skills, management skills, decision-making ability and computer knowledge – all of which are legitimate and nondiscriminatory reasons.

About two months later, a second Duty Officer position became vacant. While Plaintiff alleges he applied for this position, the uncontroverted evidence establishes that the Commission never received an application from Plaintiff and, therefore, he was never considered for the job.  Since the Commission never received (nor was it even aware of) Plaintiff's application, there was not (and could not have been) any discrimination.

Plaintiff did apply for a Duty Officer position a second time in November 2000.  At this time, the department was under the direction of a new Deputy Executive Director (Greg Richards) who required that all applicants meet the

2

minimum job requirements as defined on the job description, which included a requirement that all applicants type at least 35 words per minute. While this requirement may not have been enforced in the past (under prior Deputy Executive Directors), the record clearly demonstrates that all applicants for the Duty Officer position were required to pass the typing test. Plaintiff, however, admittedly failed the typing test – typing only 29.1 words per minute – and, therefore, did not meet the minimum job requirements for the Duty Officer position and, as a result, was not interviewed.

Ignoring all of the legitimate and nondiscriminatory reasons for his failure to be promoted to the Duty Officer position, Plaintiff, instead, summarily concludes that he did not get the job based on his gender or as a result of illegal retaliation. Unfortunately for Plaintiff, however, his subjective opinion is insufficient to prove discrimination or retaliation. See Billet v. Cigna Corp., 940 F.2d 812 (3d Cir. 1991).

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Commission hereby respectfully incorporates by reference the Facts and Procedural History as contained in the Commission's Statement of Material Facts

in support of its Motion for Summary Judgment under Local Rule of Civil

Procedure Rule 56.1 (hereinafter "Stmt. of Facts").[1]

## III.    ARGUMENT

### A.    The Standard For Summary Judgment

The "plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery. . . against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).

Where the non-moving party bears the burden of proof on a particular issue at

trial, the movant's initial burden can be met simply by "pointing out to the district

court that there is an absence of evidence to support the non-moving party's case."

Celotex, 477 U.S. at 325.  After the moving party has met its initial burden, the

non-moving party bears the burden of demonstrating that there are disputes of

material fact that should proceed to trial. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986). To meet this burden, the non-moving party must

point to specific, affirmative evidence in the record and not simply rely on

allegations or denials in the pleadings. Celotex, 477 U.S. at 324.

---

[1] The Commission accepts the facts as true for purposes of this Motion only and
does not, in any way, waive its right to dispute the facts contained therein at any
time during any hearing or trial with respect to this matter.

Summary judgment is appropriate if the non-moving party fails to rebut the moving party's motion by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. In this regard, the Third Circuit has held that the non-moving party must provide "more than a mere scintilla of evidence" to create a genuine dispute as to a material fact, and cannot rely on unsupported assertions, conclusory allegations or suspicions. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

**B.     Plaintiff Cannot Establish That The Commission's Legitimate, Nondiscriminatory Reasons For Not Offering Him A Duty Officer Position Were A Pretext For Discrimination.**

It is well established that the plaintiff in an action under Title VII bears the burden of proving intentional discrimination by a preponderance of the evidence. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). The plaintiff must prove that the alleged impermissible considerations (i.e., retaliation and gender) were determinative factors in the adverse employment action about which the plaintiff complains. Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). A disparate treatment claim cannot succeed "unless the employee's protected trait actually played a role in the decision making process and had a determinative influence on the outcome." Id.; see also Miller v. Cigna Corp., 47 F.3d 586 (3d Cir. 1995).

The order and allocation of burdens of proof in retaliation cases follow the standards established for Title VII claims in general. Waddell v. Small Tube Prod., Inc., 799 F.2d 69, 73 (3d Cir. 1986). In cases such as this, therefore, the burden of proof is based upon the framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination.[2] If the plaintiff succeeds, the burden then shifts to the employer who must articulate a legitimate, nondiscriminatory reason for its actions. Burdine, 450 U.S. at 254. Once the employer articulates a legitimate and nondiscriminatory reason for its decision, the burden then shifts to the plaintiff to show, by a preponderance of the evidence, that the defendant's explanation is pretextual. Id.

The ultimate burden of persuasion remains at all times with the plaintiff. To survive a motion for summary judgment, "the plaintiff . . . must submit evidence which: (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

To this end, the plaintiff must:

---

[2] For purposes of this Motion only, the Commission is not disputing whether or not Plaintiff can satisfy the *prima facie* requirement.

> demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons.

Id. at 764-65. (Citations omitted).

The plaintiff cannot simply show that the defendant's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the defendant -- not whether the defendant is "wise, shrewd, prudent, or competent." Id. at 765.  And it does not matter if the plaintiff agrees with the decision made by her employer -- the only question is whether the alleged adverse employment action was the result of a discriminatory intent. Billet v. Cigna Corp., 940 F.2d 812 (3d Cir. 1991).

### 1.    The Commission Did Not Offer Plaintiff the Duty Officer Position for Legitimate, Nondiscriminatory Reasons.

Even assuming, *arguendo*, that Plaintiff can establish a *prima facie* case of retaliation, his claims against the Commission still must fail because he has not shown that the Commission's articulated reasons for not offering him the Duty Officer position were a pretext for intentional discrimination.  In this regard, the Commission's Statement of Material Facts includes significant corroborating evidence supporting the Commission's decision not to promote Plaintiff to the Duty Officer position.

Plaintiff was employed by the Commission in the Communications Center as a Radio Operator II – a position he had held since 1996. (Stmt. of Facts at ¶ 3). Prior to 1996, Plaintiff had been employed as a Radio Operator I for about fifteen (15) years. (Stmt. of Facts at ¶¶ 1, 3).

Plaintiff alleges that he applied for a Duty Officer position, a "management" position, on three separate occasions, April 1999, July 1999 and November 2000. (Stmt. of Facts at ¶¶ 31, 58, 69). In each instance, Plaintiff was not selected for the Duty Officer position. (Stmt. of Facts at ¶¶ 51, 65, 82). Plaintiff believes that he was not selected based upon his gender[3] and in retaliation for supporting one of his former co-employees (Terri Edwards) in her race discrimination claim against the Commission. (Stmt. of Facts at ¶¶ 52, 83). Contrary to his beliefs, Plaintiff was not promoted to the Duty Officer position for legitimate and nondiscriminatory reasons.

      (a)    **Plaintiff was not selected for the Duty Officer position in April 1999 because he lacked leadership skills, management and decision-making abilities, and computer knowledge.**

In April 1999, the Commission posted a notice that it was accepting applications for three (3) open Duty Officer positions in the Communications

---

[3] Plaintiff has no evidence to support his gender discrimination claim other than the sole fact that a female actually was awarded one of the available Duty Officer positions he sought.

Center. (Stmt. of Facts at ¶ 30).  Plaintiff applied for the Duty Officer position on

April 23, 1999 and, soon thereafter, received a notice from the Human Resources

Department acknowledging receipt of his application. (Stmt. of Facts at ¶¶ 31-32).

Plaintiff met the minimum qualifications for the position – which means that

based on the information given on Plaintiff's application, he met the minimum

qualifications for the job.[4] (Stmt. of Facts at ¶ 33).  In accordance with the

Commission's Policy and Procedure for Promoting Employees ("Policy No. 65"),

he was given an interview with the interview panel, which included Joseph

Sullivan (Communications Center Manager), Joseph Rispoli (Safety Manager), and

William Capone (Director of Marketing). (Stmt. of Facts at ¶¶ 28, 39).

Plaintiff was one of five (5) candidates to be interviewed for the open Duty

Officer positions. (Stmt. of Facts at ¶ 38).  Per Policy No. 65, all interviews were

structured in the same manner, with a list of standard interview questions that were

asked of each candidate. (Stmt. of Facts at ¶¶ 25-26, 40-41).  After the interview

process was concluded, the panel deliberated over the eligible candidates to

determine who, if anyone, would be recommended for the Duty Officer positions.

(Stmt. of Facts at ¶ 43).  Ultimately, Fred Jumper ("Jumper") and Dale G.

---

[4] Notably, the position required a Bachelor's Degree or an equivalent combination
of experience and training.  Even though Plaintiff did not have the requisite
Bachelor's Degree, based on his experience and training, he was considered to
meet the minimum qualifications for the job.  (Stmt. of Facts at ¶ 35).

Wickard, II ("Wickard") were recommended for the Duty Officer positions – no other candidates were recommended. (Stmt. of Facts at ¶ 44).

Plaintiff was not recommended for the position because he lacked management and decision-making skills, he did not show strong leadership abilities and did not have adequate computer knowledge. (Stmt. of Facts at ¶¶ 46-47, 49-50). This decision was based upon what the panel learned during the interview process coupled with the lead interviewer's (William Capone) prior experiences from working with Plaintiff. (Stmt. of Facts at ¶¶ 47-48). There was no discussion about Mr. Williams' relationship with Ms. Edwards; nor was anyone on the panel asked not to promote Mr. Williams because of his relationship with Ms. Edwards, or for any other reason. (Stmt. of Facts at ¶¶ 52-56).

Plaintiff has failed to cast any doubt upon the Commission's legitimate, nondiscriminatory reasons for the action taken. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) (to survive summary judgment, the plaintiff must produce evidence from which a reasonable factfinder could conclude that the employer's proffered explanation for its actions was false). Here, as evidence of retaliation, Plaintiff offers only an alleged "stray remark" made by a former Duty Officer, Ronald Frank, coupled with his subjective disagreement with the hiring decision of the Commission.

**(i)    Plaintiff's subjective belief is not sufficient to establish intentional discrimination.**

Plaintiff believes he should have been given the position based solely upon his years of employment as a Radio Operator. Unlike a Union position, however, seniority is not a consideration with respect to management level positions at the Commission. Rather, with respect to management positions, the question is simply which candidate is most qualified for the job – it does not matter who has the most seniority with the Commission. (Stmt. of Facts at ¶ 12).

Moreover, it is not sufficient for Plaintiff to allege that the Commission's decision not to promote him was ultimately the wrong decision, since the factual dispute at issue is whether discriminatory animus motivated the Commission, not whether the Commission's decision was "wise, shrewd, prudent, or competent." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994); Keller v Orix Credit Alliance, Inc., 130 F.3d 1101 (3d Cir. 1997) (absent evidence of discrimination, employers may make business decisions and courts will not interfere with or second-guess such decisions). Courts are not permitted to second-guess an employer's standards; nor are they permitted to "make personnel decisions for employers." See Burdine, 450 U.S. at 259.

It is well-settled that the wisdom or accuracy of an employer's business judgment are not at issue in a discrimination case. Fuentes v. Perskie, 32 F.3d 759

(3d Cir. 1994). Accordingly, Plaintiff's unsubstantiated questioning of the "wisdom" and "accuracy" of the Commission's decision to promote others having less seniority than he is meaningless since he has failed to provide any evidence to cast doubt upon the Commission's legitimate and nondiscriminatory reasons for the decision made. Id. This is especially true where the record includes contemporaneous evidence supporting the employer's articulated reasons for its decision. Acampora v. Konica Bus. Machs., USA, Inc., No. 95-CV-3936, 1997 WL 214800 (E.D. Pa. Apr. 22, 1997).

In this case, the corroborated and well-documented evidence supporting the Commission's position is overwhelming. Plaintiff has offered no evidence even suggesting that he was more qualified for the position than Jumper or Wickard. Rather, he simply states that since he had more seniority with the Commission than Jumper and Wickard and held the position of a Radio Operator II (which albeit had limited supervisory responsibilities), he should have been hired. Contrary to Plaintiff's beliefs, the record clearly establishes that after deliberation, the panel did not recommend Plaintiff for the position because he lacked managerial qualities, leadership ability and computer skills. Conversely, Jumper and Wickard did, in fact, possess these qualities. Further, it is these qualities (i.e., managerial skills and leadership abilities) that are the main difference between a Radio Operator II and a Duty Officer.

Plaintiff lacked these skills and therefore, was not promoted from a Radio Operator II position to the Duty Officer position.

### (ii)    The comments of Ronald Frank are "stray remarks" and should not be given any weight by the Court.

The only direct evidence of retaliation Plaintiff offers are alleged stray remarks made by non-decision makers.  In this regard, Plaintiff argues that alleged comments made by Ronald Frank ("Frank") and Joseph McCool ("McCool") establish a discriminatory motive on the part of the Commission in its decision not to promote him to a Duty Officer position.  Specifically, Plaintiff alleges that McCool told Frank to tell Plaintiff that his promotion would be affected if he continued to help Edwards.

Stray remarks such as these are not enough to sustain Plaintiff's burden in this case.  See Sosky v. International Mill Serv., Inc., Civ. A. No. 94-2833, 1996 WL 32139, at *4 (E.D. Pa. Jan. 25, 1996), aff'd, 103 F.3d 114 (3d Cir. 1996). Generally, "Stray remarks by non-decision makers or by decision makers unrelated to the decision process are rarely given great weight …" Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992); Rand v. Mannesmann Rexroth Corp., Civ. A. No. 01-3564, 2002 WL 550396, at *5 (E.D. Pa. Apr. 15, 2002).  A stray remark is insufficient to show that a defendant's legitimate, nondiscriminatory reasons for its actions were a pretext for discrimination.  Rand, 2002 WL 550396, at *5 (citing Ezold, 983 F.2d at 545).

In <u>Rand</u> – an age and race discrimination case – the court held that a statement by a supervisor to the plaintiff's immediate supervisor referring to the plaintiff as a "f------ old man" was a stray remark, and thus insufficient to show pretext. <u>Rand</u>, 2002 WL 550396, at *4. The court did not find any probative value in the comment with respect to the plaintiff's age claim because the supervisor was not involved in the decision to terminate the plaintiff and the remark was made temporally remote from the date of the termination decision. <u>Id.</u>, 2002 WL 550396, at *5. Further, the court gave no weight to the fact that the employee who made the statement was a supervisor. <u>Id.</u>

The uncontroverted facts establish that neither McCool nor Frank were involved in the selection process for the Duty Officer position. (Stmt. of Facts at ¶ 55). Rather, the recommendations were made by the interview panel, which included Joseph Sullivan, Joseph Rispoli and William Capone. (Stmt. of Facts at ¶ 39). To this end, there is no evidence that the panel ever considered Plaintiff's relationship with Edwards when making its decision. Rather, the uncontroverted evidence establishes that the panel made its decision based solely on legitimate and nondiscriminatory factors, including Plaintiff's poor leadership and managerial capabilities and his lack of computer experience. (Stmt. of Facts at ¶¶ 46-50).

Plaintiff has failed to adduce any evidence that Frank or McCool were involved in the hiring decision for the Duty Officer position. Therefore, even

assuming, *arguendo*, these comments were made, they were not made by any of the decision makers and, therefore, do not demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" so that a reasonable factfinder could determine the Commission's reasons for not selecting Plaintiff for the Duty Officer position to be unworthy of credence.

Accordingly, the alleged stray remarks cannot be used to show pretext, and should be disregarded.

> **(b)  Plaintiff was not recommended for the July 1999 Duty Officer position because the Commission never received an application from him.**

Plaintiff alleges that he applied for, and was not selected for, a vacant Duty Officer position in July 1999. (Stmt. of Facts at ¶ 58).  While Plaintiff alleges he turned in an application to the Human Resources Department, he admits that he never received an acknowledgement that his application had actually been received. (Stmt. of Facts at ¶ 58).  Moreover, despite the fact that Policy No. 65 (Policy and Procedure for Promoting Employees) requires that the applicant advise Human Resources if he does not receive an acknowledgement of his application, Plaintiff did not make any such inquiry to  the Human Resources Department. (Stmt. of Facts at ¶ 59).

The uncontroverted and well documented evidence establishes that regardless of whether or not Plaintiff believes he sent an application to Human

Resources, one was not received and he was not considered for the job. (Stmt. of Facts at ¶¶ 61, 65).   In this regard, there is no evidence that Plaintiff ever submitted an application to Human Resources.   He admittedly did not receive an acknowledgement from Human Resources. (Stmt. of Facts at ¶ 58).   His name did not appear on the Promotion Application Log, which includes the names of all applicants – qualified and unqualified. (Stmt. of Facts at ¶ 61).   Joanne Gitto-Davis, Director of Human Resources, testified that the only reason his name would not have been on the Promotion Application Log would have been if the Human Resources Department did not receive his application. (Stmt. of Facts at ¶¶ 62-63). Moreover, Ms. Gitto Davis testified that she never had any conversations about keeping Plaintiff's name off the Promotion Application Log because of his relationship with Edwards or for any other reason. (Stmt. of Facts at ¶ 64).

Plaintiff has failed to produce any evidence establishing that he did, in fact, submit an application to the Human Resources Department.   Since no application was received, Plaintiff was not even considered for the position. (Stmt. of Facts at ¶ 65).   Ultimately, a woman by the name of Diane Jordan was selected for the position. (Stmt. of Facts at ¶ 66).   At the time she was selected, Ms. Jordan was just the second female hired as a Duty Officer, as compared to five (5) men.[5]

---

[5] As of July 1999, Dave Dombrowski, Greg Rausch, Joseph Sullivan, Angela Rudy, Ronald Frank, Dale Wickard, II, and Fred Jumper had all been hired as Duty

(Stmt. of Facts at ¶ 67).  Since no application was received (and since the Commission was not aware Plaintiff had applied for the job), the Commission could not possibly have discriminated against Plaintiff.  Again, Plaintiff cannot rely on the alleged "stray remark" to prove intentional discrimination, especially considering the Commission did not even know he had applied for the job.

To the extent Plaintiff also is alleging gender discrimination, Plaintiff has failed to offer any evidence whatsoever (other than the fact that the Commission hired a woman for the position) even suggesting that there might have been any discrimination based on gender, and, therefore his gender discrimination claim also fails.

> **(c)   Plaintiff was not eligible for the Duty Officer position in November 2000 because he failed the required typing test.**

Plaintiff applied for the Duty Officer position for a second time in December 2000. (Stmt. of Facts at ¶ 69).  This time, like the first time he applied, he did receive an acknowledgement that his application was received by the Human Resources Department. (Stmt. of Facts at ¶ 70).  At the time of this application, McCool had resigned from the Commission and Greg Richards had been hired as the Deputy Executive Director of Customer Service. (Stmt. of Facts at ¶¶ 72-73).

---

Officers.  Angela Rudy was the only female at this time, making Diane Jordan just the second female Duty Officer.

Mr. Richards testified that it was time to "raise the bar" for Duty Officers, and, as part of this objective, enforced the requirement that all candidates for the Duty Officer position be able to type at least 35 words per minute. (Stmt. of Facts at ¶¶ 75-76).   The Duty Officer job description had always required this, but it had not been enforced by prior Deputy Executive Directors. (Stmt. of Facts at ¶ 75). After Daniel Bretzman was hired as the Operations Center Manager in November 2000, he made sure that all applicants for the Duty Officer position were able to pass the typing test. (Stmt. of Facts at ¶ 78).  In fact, Mr. Bretzman agreed that, effective November 2000, "there is no way you get the [Duty Officer] job unless you take a typing test." (Stmt. of Facts at ¶ 78).

After applying for the job, Plaintiff was determined by Human Resources to meet the minimum eligibility requirements for the job and, along with the other qualified candidates, was asked to take a typing test.  (Stmt. of Facts at ¶¶ 71, 77-78).  In total, three (3) candidates were listed as qualified (i.e., met the minimum qualifications) on the Promotion Application Log and each was asked to take a typing test. (Stmt. of Facts at ¶ 78).  Plaintiff failed his typing test (he typed only 29.1 words per minute), and the other two candidates each passed – typing 35.2 and 37 words per minute, respectively.  (Stmt. of Facts at ¶ 79).

Plaintiff did not meet the minimum eligibility requirements and, therefore, was not even considered for the job, and, as such, there could not possibly have been any discrimination.

With respect to each of his applications for the Duty Officer position, Plaintiff has failed to adduce any evidence that the Commission's legitimate and nondiscriminatory reasons are actually a pretext for retaliation. The Commission's only burden is to articulate a legitimate, nondiscriminatory reason for its actions. The Commission has done so here. With respect to his April 1999 application, Plaintiff was not selected based upon his lack of managerial and decision-making skills, his poor leadership ability and lack of computer experience. The Commission never received his application for the July 1999 posting. And for the November 2000 position, Plaintiff failed his typing test and, therefore was not qualified for the job.

Accordingly, the burden shifts to Plaintiff to demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the Commission's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence. See Fuentes, 32 F.3d at 764-65. He has failed to do so! Again, his only evidence of discrimination is an alleged "stray remark" by a non-decision maker that should be disregarded. As such,

19

Plaintiff cannot sustain his burden of proof on summary judgment and, therefore, his Complaint must be dismissed in its entirety.

**C.    Title VII Does Not Permit Punitive Damages Against The Commission.**

At a minimum, since Plaintiff's Complaint (albeit quite vague) does not state a claim for punitive damages, he should be precluded from seeking them in this action.  To the extent Plaintiff is, nevertheless, seeking punitive damages, they cannot be recovered against the Commission under Title VII because it is a government agency and/or a political subdivision.

Punitive damages are not available in Title VII cases because the 1991 Amendments to Title VII expressly exempt governments, government agencies and political subdivisions from liability for punitive damages.  42 U.S.C.A. § 1981a(b)(1); <u>Poli v. SEPTA</u>, No. Civ. A. 97-6766, 1998 WL 405052 (E.D. Pa. July 7, 1998).

The Commission is a Commonwealth agency as defined by Section 102 of the Judicial Code, 42 Pa.C.S. § 102. "Commonwealth agency" is defined under that same section as boards, commissions, authorities and other agencies and officers of the Commonwealth government.  The Commission is a "commission" pursuant to 36 P.S. § 652d. <u>See</u> <u>In re Application of Pa. Turnpike Comm'n</u>, 715 A.2d 1219 (Pa. Commw. 1998).

Plaintiff's claim for punitive damages, therefore, must be dismissed.

## IV.    **CONCLUSION**

For all of the foregoing reasons, the Commission respectfully requests that this Court grant its Motion for Summary Judgment and enter an Order dismissing Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,

MARVIN L. WEINBERG, ESQUIRE
JOHN C. ROMEO, ESQUIRE
FOX, ROTHSCHILD, O'BRIEN
 & FRANKEL, LLP
2000 Market Street, Tenth Floor
Philadelphia, PA  19103-3291
(215) 299-2000

Attorneys for Defendant,
Pennsylvania Turnpike Commission

Dated: August 30, 2002

21

# CERTIFICATE OF SERVICE

I, John C. Romeo, Esquire, hereby certify that a true and correct copy of Defendant's Motion for Summary Judgment, Statement of Material Facts and Memorandum of Law were served on Plaintiff's counsel via first class mail, postage pre-paid, addressed as follows:

Andrew J. Ostrowski, Esquire
4311 North 6th Street
Harrisburg, PA  17110

*Counsel for Plaintiff*

JOHN C. ROMEO

Dated: August 30 , 2002

# CERTIFICATION OF COMPLIANCE WITH LOCAL RULE OF
# CIVIL PROCEDURE 7.8(b)(2)

Pursuant to Local Rule 7.8(b)(2) of the Local Rules of the United States District Court for the Middle District of Pennsylvania, I hereby certify that this Brief complies with the requirements of Local Rule 7.8(b)(2). The Brief, exclusive of the table of contents, table of authorities and certifications contains _4,550_ words.

John C. Romeo

Dated: August **30**, 2002