UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY E. WILLIAMS JR., <br>     Plaintiff <br><br> v. <br><br> PENNSYLVANIA TURNPIKE COMMISSION, <br>     Defendants | : CIVIL ACTION NO.: 1:CV-01-0877 <br> : <br> : <br> : <br> : <br> : <br> : |



FILED
HARRISBURG, PA

SEP 25 2002

MARY E. D'ANDREA, Cl
_____
     Deputy Clerk

**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

I.    **INTRODUCTION**

The basis for Defendant's Motion is that Plaintiff cannot point to any evidence to support the inference that the legitimate, non-discriminatory reasons for the adverse employment actions taken against him are mere pretexts for a retaliatory animus. Defendant simply ignores relevant and material evidence that directly conflicts with the factual contentions being made, and discounts other evidence as innocuous when that evidence can only reasonably be interpreted to support Plaintiff's allegations of retaliation. While Defendant attempts to minimize the direct evidence of a retaliatory animus as mere "stray remarks", the fact is that two of the decision makers in the retaliatory action at issue unequivocally linked Plaintiff's participation in the protected conduct of his coworker, Terri Edwards, to his future with the Turnpike Commission,

1

and Plaintiff's non-selection for promotion to the position of Duty Officer shortly thereafter demonstrates a causal connection between his protected activity and adverse employment action. Defendant's Motion for Summary Judgment lacks credibility, lacks support, and must be denied.

## II.  FACTUAL BACKGROUND

In 1999, Plaintiff was employed as a Radio Operator II in the Communications Center in the Department of Safety and Operations. The Director of Safety and Operations was Joseph McCool. McCool was responsible for announcing and filling three vacancies in the position of Communications Center Duty Officer in June and July of 1999. App. 1 and 13; App. 82 (Richards dep. pp. 18-20). McCool was ultimately responsible for the Duty Officer selections because the position was open in his area of responsibility, and documents show his involvement in every aspect of the process. App. 1-22.

The four Communications Center Duty Officers reported directly to the Operations Center Manager who reported directly to the Director. In April of 1999, Joseph Sullivan was the Operations Center Manager and reported directly to McCool. Until in or about February of 1999, Ron Frank had held the position of Operations Center Manager, but was demoted to Duty Officer while Sullivan was promoted from Duty Officer to Operations Center Manager. App. 39-41 (Frank dep. pp. 7-16). As Operations Center Manager, Frank was responsible for hiring Plaintiff for the position of Radio Operator II, and would have recommended Plaintiff for the position of Duty Officer if he were involved in the selection decisions at issue. App. 42-43 (Frank dep. pp. 17-23).

In April, 1999, McCool announced three vacancies in the position of Communications Center Duty Officer, and Plaintiff submitted his application and resume for consideration. App.

2

1, 2 and 9-12. Plaintiff was one of eight (8) out of twenty (20) applicants who qualified for the position and was interviewed, and Plaintiff was the most senior qualified applicant. App. 4-5. In May, 1999, an interview panel began the process of selecting candidates to fill the three vacancies. On June 4, 1999 the panel recommended only two names for the three positions, and each of those candidates was placed in a Duty Officer Position. App. 6-8. The third vacancy was not filled at that time, but was filled by McCool after July, 1999. App. 13-22. Plaintiff also applied for the July, 1999 vacancy, but was not even considered.

During 1998 and 1999, Plaintiff supported one of the Radio Operator Ones who worked on his shift, Terri Edwards, in the pursuit of complaints of discrimination she had lodged against the Turnpike Commission arising out of her employment. App. 44-45 (Frank dep. pp. 28-34). Edwards was terminated from the Commission in May, 1999. See *Edwards v. Pennsylvania Turnpike Commission*, Middle District No. 1:CV-01-0357. McCool's selection decision for the Duty Officer positions occurred between April and June, 1999.

Although McCool was primarily responsible for the selection decision for the Communications Center Duty Officer positions, his designee, Operations Center Manager Joseph Sullivan, served on the Interview Panel for the June 1999 selection process, and Sullivan signed off on the recommendations to fill only two positions at the time. App. 8. Shortly after Ron Frank had been demoted to Duty Officer and Sulivan made Operations Center Manager, which was around the same time the April, 1999 selection process was beginning, both McCool and Sullivan had conversations with Frank wherein they advised Frank to warn Plaintiff that his future with the Turnpike Commission would be in jeopardy if he continued to assist Edwards in her claims against the Commission. App. 45-46 (Frank dep. pp. 32-33). Specifically, McCool told Frank to talk to Plaintiff to tell him that he was jeopardizing his chance to become a Duty

3

Officer by continuing to "support the fucking nigger." Frank dep. pp. 32-33. These conversations happened in or around February through April 1999, the Duty Officer position was posted in April 1999, Edwards was terminated in May 1999, and Plaintiff was passed over for one of three Open Duty Officer positions in June 1999 and one of those positions remained unfilled until McCool filled it in September. App. 18.

### III.    STATEMENT OF THE ISSUE

Whether Plaintiff can point to sufficient direct and circumstantial evidence from which to reasonably infer that Defendants proffered legitimate, non-discriminatory explanation for his non-promotion were pretextual.

[Suggested Answer:   Yes]

### IV.    ARGUMENT

#### A.   Standard of Review

Under the Federal Rules of Civil Procedure a party is entitled to seek summary judgment in its favor on "all or any part" of the claims that have been made. Fed. R. Civ. P. 56(b). The courts are instructed that summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c). In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S. Ct. 2548 (1986), the Court articulated the familiar standard that:

> "the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

477 U.S. at 323, 106 S. Ct. at 2553. A court may grant summary judgment "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in rule 56, is satisfied." Id..

Summary judgment has been characterized as "a drastic remedy," because it cuts off a party's right to a jury trial; that is why courts must resolve any doubts as to the existence of a genuine issue of material fact against the moving party. Ness v.Marshall, 660 F.2d 517, 519 (3d Cir. 1981). The drastic nature of summary judgment supports the limitation of the court's function to determining whether issues of fact exist and not resolving issues of fact, even if a preponderance of the evidence supports the moving party's contentions concerning the "factually unsupported claims or defenses" that it wishes to "isolate and dispose of". Celotex, 477 U.S. at 323-24, 106 S. Ct. at 2553.

The papers of the movant are to be carefully scrutinized while those of the non-movant should be indulgently received. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074 (1976). The Court must disregard all evidence favorable to the moving party that a jury is not required to believe and should give credence to the evidence favoring the nonmovant and the unimpeached or uncontradicted evidence from disinterested witnesses supporting the moving party. Reeves v. Sanderson Plumbing, 530 U.S. 133, 150-51, 120 S. Ct. 2097, 2110 (2000). As a further protection of the nonmoving party's right to trial, the courts must draw all inferences in favor of that party and are not to resolve any genuine credibility issues. Ness, 660 F.2d at 519.

Rule 56 clearly places the initial burden on the moving party to show initially how the evidentiary matter in support of the motion establishes the absence of a genuine issue concerning

any material fact. Fed. R. Civ. P. 56, Advisory Committee Notes to 56(c). If the moving party does not meet the initial burden of establishing the absence of a genuine issue of material fact, summary judgment must be denied before the non-moving party's response even needs to be considered. Id..

If the moving party meets its initial burden of showing the evidentiary basis that establishes the absence of a genuine issue, the nonmoving party is required to go beyond the contrary allegations of their complaint and must come forward with evidence disputing the materials relied upon by the moving party to avoid conceding the fact at issue for purposes of summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 160-61, 90 S. Ct. 1598, 1610 (1970).

When, as in the present case, intent is an issue, the court must be cautious about granting summary judgment. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 321 (3d. Cir. 2000). Moreover, because issues of pretext often turn on credibility, summary judgment should not be granted when such issues arise because credibility determinations are for a jury. See e.g. Jackson, 826 F.2d at 236.

In ruling on a Motion for Summary Judgment, this Court must review the evidence in a light most favorable to Plaintiff, to give Plaintiff the benefit of all reasonable inferences, and to resolve all doubts in favor of Plaintiff. See, Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 1356 (1986). The Third Circuit has held that this standard must be "applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Stewart v. Rutgers, 120 F.3d 426, 431 (3d Cir. 1997).

### B. Plaintiff Can Point to Abundant Evidence of Pretext.

In the present case, Defendant is defending Plaintiff's claims by taking the position that there is no evidence from which to draw a reasonable inference that the legitimate, non-discriminatory reasons proffered by Defendant are merely a pretext for unlawful retaliation. Defendant concedes, for purposes of its Motion, that Plaintiff can establish a prima facie case of retaliation; therefore, the only issue for this Court to decide is whether issues of material fact exist as to the issue of pretext.[1]

To survive summary judgment when the employer has articulated a legitimate nondiscriminatory reason for its action, there must be some direct or circumstantial evidence from which a finder of fact could reasonably disbelieve the employer's articulated reasons or believe that a discriminatory reason was more likely than not a motivating or determinative cause. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). If Plaintiff points to evidence that calls into question the true motivation behind Plaintiff's separation, the inference of an improper motive may be drawn, and it is for a jury to determine whether Defendant's improper motive was unlawful as well. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742 (1993).

The character and quality of the evidence for which the plaintiff can show pretext varies under circumstances of the case. To defeat summary judgment, a plaintiff may not need to point

---

[1] Defendant does not address, and does not dispute, Plaintiff's ability to show a causal connection between his protected activity and the adverse employment actions at issue, and given the temporal proximity between the relevant events, such connection is obvious. Clearly, a reasonable juror could find "that retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of that process." Krouse v. American Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997); see also Farrell v. Planters Lifesavers Co., 206 F.3d 271 (3d Cir. 2000).

to evidence other than that which establishes the prima facie case. Simpson v. Kay Jewelers, Inc., 142 F.3d 639, 644 (3d Cir. 1998). Of course, a plaintiff may also point to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons to create a reasonable inference of discrimination. Fuentes, 32 F.3d at 764. Courts have also considered noncompliance with internal policies, statements by supervisory-level employees, past treatment of the plaintiff and others, and the past opportunities provided to a complaining plaintiff relevant in pretext cases. See e.g., Colgan v. Fisher Scientific Co., 935 F.2d 1407 (3d Cir. 1991) (en benc) (adherence to employer rules); Wilson v. Susquehanna Township Police Dept., 55 F.3d 126 (3d Cir. 1995) (discriminatory statement of decisionmaker's supervisor); Fuentes, 32 F.3d 759 (past discrimination and less favorable treatment); and Ezold v. Wolf, Block, Schorr and Solis-Cohen, 98 F.3d 309 (3d Cir. 1993) (opportunities given employee). In this case, Plaintiff points to every manner of evidence recognized as competent to create triable issues.

No evidence speaks stronger to Defendant's retaliatory animus than the direct evidence of the decisionmakers' retaliatory animus. Defendant at least (possibly so as to avoid a motion for sanctions) addressed the issue of the statements of warning made by Joe McCool and Joe Sullivan that Plaintiff's chance of becoming a Duty Officer was being jeopardized by his support of Edwards, but Defendant's attempt to cast such germane evidence off as mere "stray remarks" reflects desperation and lacks credibility. Unlike the situation Rand as cited by Defendant, the present case involves temporal proximity and involves persons directly involved in the process, and the probative value of this evidence cannot be reasonably minimized to any degree.

In viewing all the evidence in the light most favorable to Plaintiff, this Court must find that issues of fact preclude summary judgment, and Defendant's Motion must be denied.

## CERTIFICATE OF SERVICE

I, Andrew J. Ostrowski, Esquire, hereby certify that I have served a true and correct copy of the foregoing document by depositing the same in the U.S. Mail, first class, postage prepaid, addressed as follows:

>John C. Romeo, Esquire
>Fox, Rothschild, O'Brien & Frankel
>2000 Market Street, Tenth Floor
>Philadelphia, PA 19103-2706

By_____
Andrew J. Ostrowski, Esquire

Dated: September 16, 2002