# ORIGINAL

⊃ to cr w/o

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY E. WILLIAMS, JR., | : CIVIL CASE |
| | : |
| Plaintiff, | : |
| | : NO. 1:CV 01-0877 |
| v. | : |
| | : (Judge Rambo) |
| PENNSYLVANIA TURNPIKE | : |
| COMMISSION, | : |
| | : |
| Defendant. | : |

**FILED**
HARRISBURG, PA

OCT 3 1 2002

MARY E. D'ANDREA, CLERK

## DEFENDANT PENNSYLVANIA TURNPIKE COMMISSION'S SUPPLEMENTAL BRIEF IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Pennsylvania Turnpike Commission (the "Commission"), files

this Supplemental Brief in Reply to Plaintiff's Response to Defendant's Motion for

Summary Judgment for purpose of supplementing the record with the Court's

decision in a related matter, *Terri Lynn Edwards v. The Pennsylvania Turnpike

Commission*, 1:CV-01-0357 (M.D. PA, October 23, 2002), a copy of which is

attached hereto as Exhibit "A".

PH1 437505v1 10/30/02

By way of brief background, Plaintiff in this case complains that he did not receive a promotion as a result of his alleged support of a former co-employee, Terri Edwards.[1]  Like Plaintiff, Edwards filed a Complaint against the Commission alleging discrimination and retaliation.  On  October 23, 2002, the Honorable John E. Jones, III granted the Commission's Motion for Summary Judgment and dismissed Edwards' Complaint in its entirety.

Since some of the facts and issues raised in the *Edwards* case are related to the instant case, a copy of Judge Jones' decision is attached for the Court's consideration.

Respectfully submitted,

MARVIN L. WEINBERG, ESQUIRE
JOHN C. ROMEO, ESQUIRE
FOX, ROTHSCHILD, O'BRIEN
 & FRANKEL, LLP
2000 Market Street, Tenth Floor
Philadelphia, PA  19103-3291
(215) 299-2000
Attorneys for Defendant,
Pennsylvania Turnpike Commission

Dated:  October 30, 2002

---

[1]  Edwards and Williams are both represented by the same counsel, Andrew J. Ostrowski, Esquire.

PH1 437505v1 10/30/02

# CERTIFICATE OF SERVICE

I, John C. Romeo, Esquire, hereby certify that a true and correct copy of the Pennsylvania Turnpike Commission's Supplemental Brief in Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment was served on Plaintiff's counsel via first class mail, postage pre-paid, addressed as follows:

Andrew J. Ostrowski, Esquire
4311 North 6th Street
Harrisburg, PA 17110

*Counsel for Plaintiff*

JOHN C. ROMEO

Dated: October 30, 2002

PH1 437505v1 10/30/02

Exhibit A

42

10/23

Certified from the record
Date 10/23/02
Mary E. D'Andrea, Clerk
Per B. Prout,
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRI LYNN EDWARDS,                 :          No. 1:CV-01-0357

       Plaintiff               :          (Judge Jones)

       v.                      :          FILED
                        :          WILLIAMSPORT, PA

PENNSYLVANIA TURNPIKE               :          OCT 2 3 2002
COMMISSION,                         :
                              MARY E. D'ANDREA, CLERK
       Defendant.              :          Per_____ DEPUTY CLERK

### MEMORANDUM AND ORDER

### October 23, 2002

### BACKGROUND

Plaintiff, Terri Lynn Edwards ("Edwards"), initiated this employment

discrimination case pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000e, *et seq.*, as amended by the Civil Rights Act of 1991, against

Defendant, Pennsylvania Turnpike Commission (the "Commission"), on

February 26, 2001.

Plaintiff alleges that the Commission failed to promote and ultimately

terminated her because of her race and/or in retaliation for having filed

charges with the Pennsylvania Human Relations Commission ("PHRC").

1

17:24 OCT 23, 2002  TO: M●● , L. WEINBERG   FR: SCAN31          #26571  PAGE: 3/20

Discovery closed on February 15, 2002.  On March 15, 2002,

Defendant filed a Motion for Summary Judgment.  On July 22, 2002,

Plaintiff filed a Motion to Supplement Summary Judgment Record With

After-Acquired Evidence.

On August 6, 2002, District Judge James McClure transferred this case

to the undersigned.

For the following reasons, Plaintiff's motion will be denied and

Defendant's motion will be granted.


## STATEMENT OF RELEVANT FACTS

Edwards, an African American, was an employee of the Commission

since she was hired as a Radio Operator I in the Safety and Operations

Division on June 23, 1992, until she was terminated on May 12, 1999.

Radio Operator I is a union position, and therefore the relationship

between Edwards and the Commission was governed by the Collective

Bargaining Agreement that had been negotiated and agreed upon by both

parties.

As a Radio Operator I, Edwards' duties included handling emergency

2

calls and working to protect the traveling public.  According to the job description, Edwards was also required to have "[t]horough knowledge of the geographic location of all Turnpike facilities [and] the ability to communicate with others clearly and distinctly."  Defendant's Exhibit B at 2.

The Commission also employs Radio Operator IIs, which are considered to be supervisory positions.  Radio Operator IIs are entitled to make disciplinary recommendations but not final decisions as to hiring and firing.

The general chain of command at the Commission is as follows: Radio Operator IIs report to Duty Officers, who report to the Communications Center Manager.  The Communications Center Manager then reports to the Director of Safety and Operations, who in turn reports to the Commission's Acting Deputy Executive Director of Customer Service and Legislative Liaison.  At the time of Plaintiff's termination, Ron Frank, Greg Rausch, Dave Dombrowsky, and Angela Rudy were Duty Officers, Joseph Sullivan was the Communications Center Manager, Joseph McCool was the Director of Safety and Operations, and John Martino was the Commission's Acting Deputy Executive Director of Customer Service and Legislative Liaison.

3

On two separate occasions, in January and April of 1999, Plaintiff applied for higher positions within the Commission.   Plaintiff alleges that she was not promoted to either of these higher positions because of her race.

The Commission points out that in reference to Edward's January bid for a promotion to the position of Executive Secretary, a panel recommended two other applicants for the job, one of whom was an African American female, based on their secretarial experience, education, technical training, and professionalism during their interviews.  It emphasizes that one of the applicants had had nearly ten years of experience as a personal secretary to high level positions.

The Commission asserts that the Plaintiff is unable to demonstrate that she was more qualified for the position than were the two candidates recommended by the panel.  Plaintiff, however, claims that she was more qualified based on the fact that she had acquired "an Associate's Degree in Legal/Executive Secretary. [Furthermore], [a]lthough [she had] not been in the field during [her] employment at the Commission, [she] took on jobs to reintroduce [herself] back to the administrative and clerical field. [Plaintiff] is unaware as to what the panel was looking for in a candidate." Plaintiff's

4

Answer to Defendant's Statement of Material Facts at ¶114.

In reference to Plaintiff's April bid seeking a promotion to a Duty

Officer, the Commission asserts that she was not granted an interview for the

position because the Commission had terminated her employment before a

list of qualified applicants was forwarded to the interview committee.

Plaintiff also alleges that she was terminated from her employment at

the Commission due to her race. The following undisputed events took place

prior to Edwards' termination: In 1994, Plaintiff received a written warning

letter for failing to call a patrol officer when one was needed. In the letter,

Plaintiff was informed that the Commission had received numerous

complaints about her and was further warned that additional complaints

would result in further discipline, including the possibility of termination. In

1997, Plaintiff received a second written warning reprimanding her for

sending a threatening email to a co-worker. On December 1, 1998, Plaintiff

received her third written warning letter as a result of the fact that she had

allegedly threatened a co-worker with bodily injury, an allegation which

Plaintiff disputes[1], and for having failed to pass required information on to a co-worker after a shift change.  In February, 1999, Plaintiff received a two day suspension due to her failure to identify the geographic location of Turnpike facilities, her derogatory comments about Turnpike customers, and the fact that she made several personal calls, one of which had compromised the safety of a Turnpike customer.[2]  On April 15, 1999, seventeen of Plaintiff's co-workers signed a petition in reference to what they termed to be Edwards' harassing behavior, even going so far as to state that "they [were] afraid to work with her."  Defendant's Exhibit K.



Finally, on May 12, 1999, after almost seven years with the Commission, Edwards received a letter citing "insubordination[,] unauthorized ordering of periodicals which were billed to the Commission[,] and [her] continued unsatisfactory work performance" as reasons for her termination, which would be in effect as of the end of that work day.

---

[1]Edwards denies having actually threatened her co-worker, but admits having told him that she would have her "husband deal with him."  Plaintiff's Answer to Defendant's Statement of Material Facts at ¶36.

[2]Defendant also cites the fact that Edwards used improper language and disclosed confidential information on air as reasons for the suspension.  Plaintiff does not dispute the use of improper language, but states that no one was on the other end of the line at the time.  Furthermore Plaintiff asserts that other employees engaged in similar behavior as she did.



Defendant's Exhibit L.

The insubordination allegedly occurred on April 22, 1999 during an emergency call when Angela Rudy asked Edwards to perform certain functions related to her job.  Rather than complying, Edwards said: "Don't tell me what to do; I know my job."[3]  Defendant's Statement of Material Facts at ¶89.  Defendants also assert that Plaintiff had billed periodicals and courses to the Commission without its authorization.[4]  Plaintiff asserts that she never actually billed the Commission.  Rather, she claims that she had only wanted the bills to be sent to her place of employment.[5]

On May 8, 1999, John Martino held a meeting to discuss Edwards' disciplinary infractions.  After the meeting, Mr. Martino sent a letter to Joanne Gitto-Davis, the Director of Human Resources, requesting that

---

[3]Plaintiff does not dispute the specifics of this account, but states that another employee whose acts would also constitute insubordination was not fired for taking similar actions to hers.  Plaintiff asserts that the reason that employee was never terminated is that he is a white male.  Plaintiff's Answer to Defendant's Statement of Material Facts at ¶89.

[4]Defendants provide copies of invoices and collection notices as evidence of Edwards' actions.  Edwards insists, however, that she had in fact paid for her courses, and that "[a]s for the ordering of periodicals, no one [had] brought this matter to [her] attention until May 8, 1999."  Plaintiff's Answer to Defendant's Statement of Material Facts at ¶97.

[5]We note, however, that Plaintiff's name is not listed anywhere on the invoices and notices provided as exhibits by Defendant.  Rather, the bills were sent to the Accounts Payable department of the Commission.

7

Plaintiff's employment be terminated.  Ms. Gitto-Davis sent a letter to

Plaintiff on May 12, 1999, advising Plaintiff of her termination.


## MOTION FOR SUMMARY JUDGMENT

### Standard of Review:

Summary judgment is appropriate if "there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law."

F.R.C.P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d

Cir. 1990).  The party moving for summary judgment bears the burden of showing

"there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357 (3d Cir.

1992).  Summary judgment should not be granted when there is a disagreement

about the facts or the proper inferences which a fact finder could draw from them.

Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a

genuine issue of material fact.  Celotex Corporation v. Catrett, 477 U.S. 317, 323

(1986).  This may be met by the moving party pointing out to the court that there is

an absence of evidence to support an essential element as to which the non-

moving party will bear the burden of proof at trial.  Id. at 325.

Rule 56 provides that, where such a motion is made and properly supported,

8

17:28 OCT 23, 2002  TO: M⬤⬤N L. WEINBERG   FR: SCAN31            #26571  PAGE: 10/20

the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986).

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material." Id. at 248. Furthermore, a

9



dispute is genuine only if "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." Id.


## Discrimination Under Title VII:

We note at the outset that in this case, Plaintiff has brought a disparate

treatment claim against Defendant.[6]  The essence of such a claim is that it

cannot ultimately succeed "unless [the plaintiff-employee's] protected trait

actually played a role" in the employer's decision to terminate or retaliate

against her. Hazen Paper Company v. Biggens, 507 U.S. 604, 610,  113 S.Ct.

1701, 1706, 123 L.Ed.2d 338 (1993).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973), the Supreme Court articulated a burden shifting

---

[6]Disparate treatment may be distinguished from disparate impact. "'Disparate treatment'... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics.] Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment... Claims that stress 'disparate impact' [by contrast] involve employment practices that are facially neutral in their treatment of different groups that in fact fall more harshly on one group than another and cannot be justified by business necessity.  Proof of discriminatory motive... is not required under a disparate-impact theory." Hazen Paper Company v. Biggens, 507 U.S. 604, 609, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993), citing Teamsters v. United States, 431 U.S. 324, 335-336, n. 15, 97 S.Ct. 1843, 1855, n. 15, 52 L.Ed.2d 396 (1977)(citation omitted).

10

methodology for analyzing Title VII discrimination claims.[7]  In order to

establish a prima facie case of racial discrimination, the Plaintiff must prove

by a preponderance of the evidence

> (i) that he belongs to a racial minority; (ii) that he applied and
> was qualified for a job for which the employer was seeking
> applicants; (iii) that, despite his qualifications, he was rejected;
> and (iv) that, after his rejection, the position remained open and
> the employer continued to seek applicants from persons of
> complainants qualifications.

Id. at 802.  The Supreme Court has stressed, however, that the above criteria

are not rigid in that they may not be "applicable in every respect to differing

factual situations."  Id. at 802, n. 13. We note that it is well established that

this threshold burden on the plaintiff in a Title VII case is not overly

demanding; it is clear that Plaintiff has met her burden in the case at bar.[8]

    After the plaintiff has established a prima facie case of discrimination,

---

[7]The McDonnel Douglas/ Burdine burden shifting analysis as set out in McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas
Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207
(1981), also applies in Title VII cases alleging unlawful retaliation.  See Waddell v. Small Tube
Product, Inc., 799 F.2d 69, 73 (3d Cir. 1986), citing Womak v. Munson, 619 F.2d 1292, 1296 (8th
Cir. 1980), cert. denied, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981); Aguirre v. Chula
Vista Sanitary Service and Sani-Tainer, Inc., 542 F.2d 779, 781 (9th Cir. 1976).

[8]Edwards is an African American female who held a job with the Commission for
approximately seven years and was eventually fired.  For purposes of this Motion, Defendant
does not dispute that Plaintiff has established a prima facie case of discrimination.

the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. at 802. In Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court elaborated that "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id. at 254. Here, we find that Defendant has met its burden based on its assertions that it terminated Plaintiff because she was insubordinate, because she billed periodicals and a course she attended to the Commission without authorization, and because of her continued poor work performance.

As a final step in the burden shifting framework, the Supreme Court has held that if the defendant is successful in meeting its burden, the plaintiff must then be given the "opportunity to show that [defendant's] stated reason for [plaintiff's] rejection was in fact pretext." McDonnel Douglas Corp., 411 U.S. at 804. This may be accomplished "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy

12

of credence." <u>Burdine</u>, 450 U.S. at 256, *citing* <u>McDonnell Douglas</u>, 411 U.S. at 804-805; <u>see</u> also <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765(Cir. 1994)("the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's preferred legitimate reasons for its action that a reasonable fact[]finder could rationally find them unworthy of credence")(internal citations omitted).   More specifically, in order for Edwards to defeat this motion for summary judgment, she must "submit evidence which : 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a reasonable fact[]finder could reasonably conclude that each reason was a fabrication; or 2) allows the fact[]finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 762(Cir. 1994).  More specifically, Plaintiff's evidence "must allow a fact[ ]finder reasonably to infer that each of the employer's proffered non-discriminatory reasons... was either a post hoc fabrication or otherwise did not actually motivate the employment action..." <u>Id.</u> at 64.

It is at this juncture that the heart the parties' dispute lies for purposes

13

of this motion.  Defendant argues that Plaintiff has failed to demonstrate that its proffered reasons both its decision not to promote her and for its decision to terminate her are pretextual.

In support of its argument that the reasons the Commission has articulated for its adverse employment actions are pretext and that the Commission was actually motivated by racial animus, Plaintiff asserts the following: that none of her actions at work were unusual, in that other employees at the Commission behaved in the same manner; that she had been criticized for "talking too black" over the radio,[9] Plaintiff's Exhibit E at page 3; that Ron Frank had referred to her as a "trouble-making f------ n-----," Plaintiff's Exhibit A at page 26; that a co-worker was warned by Joseph McCool that his job would be in jeopardy if he continued to aid Edwards in seeking assistance in regard to workplace discrimination; that Frank Sullivan had used racial epithets concerning Plaintiff and that this conduct was reported to a supervisory official; and that another white employee who had

---

[9]In his deposition, Ronald Frank elaborates on the circumstances surrounding this exchange.  He explains that a Captain of the Pennsylvania State Police notified him that troopers were having difficulties understanding Edwards on the radio, and that he spoke with Edwards in response to those complaints.  Defendant's Reply Brief, Exhibit C at 46.

14

also been written up for insubordinate and assaultive behavior at approximately the same time as Plaintiff received no discipline in response to his actions beyond the written warning letter.

Thus, it appears that rather than calling the Commission's justifications into doubt, Edwards is instead attempting to bring forth evidence from which a reasonable fact finder could conclude that racial animus was the more likely determinative factor motivating Defendant's adverse employment actions.[10]

We believe that the evidence Plaintiff provides is insufficient to create a reasonable inference of discrimination on the part of the Commission. The stray remarks attributed to Ronald Franks and indirectly to Joseph McCool do not sustain Plaintiff's burden. "Stray remarks by non-decision makers or by decision makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992); see also Rand v. Mannesmann Rexroth Corp., 2002 WL

---

[10]Plaintiff states: "Significant elaboration is not necessary to demonstrate that there are material issues of fact that preclude summary judgment in this case - Plaintiff comes with abundant direct evidence of racially discriminatory animus coupled with circumstantial evidence of the atmosphere within which she worked such that, under all the circumstances, summary judgement must be denied." Brief in Opposition to Defendant's Motion for Summary Judgment at 9.

15

17:33 OCT 23, 2002  TO: MARVIN L. WEINBERG  FR: SCAN31          #26571  PAGE: 17/20

550396, *5(E.D.Pa.).  Here, although Plaintiff asserts that Frank and McCool hold supervisory positions at the Commission, she has failed to provide the Court with any evidence that might permit us to conclude that they were involved with the decision to terminate Plaintiff, or even empowered to do so.  It is uncontroverted that it was Joseph Martino instituted the process which led to Plaintiff's termination.  Edwards provides no indication that Frank or McCool had any involvement at all in that process.  Furthermore, the timing of the alleged remarks seems to be temporally remote from any adverse employment actions taken against Plaintiff.[11]

As for Plaintiff's contention that she was treated differently from another white employee who had engaged in conduct similar to her own but who was not terminated for that conduct, in light of the fact that the two employees were in different steps of the disciplinary procedure as contemplated by the CBA, we find that this assertion cannot sustain Plaintiff's claim.

---

[11]Based on Plaintiff's exhibits, it is clear that the comments about her speech were made prior to June 25, 1997, when Plaintiff had written a letter to the Commissioner of the Turnpike indicating her incredulity that such comments were made.  It is unclear when any of the alleged derogatory comments were made by Ronald Frank or other supervisory level personnel.  Despite the troubling nature of these allegations, they are too general and remote to aid the Court in resolving the final step in the burden shifting framework.

16

We also find that Plaintiff's claims that she was not promoted due to discriminatory reasons are untenable.  As mentioned previously, Plaintiff was not even eligible for one of the positions due to her termination.  In reference to the position that Plaintiff applied for in January of 1999, Plaintiff has not provided evidence from which a reasonable person could find that she was more qualified than the applicants who were actually recommended for the position.

The record before us reveals that Plaintiff was an insubordinate, poorly performing employee of Defendant who, despite abundant contrary indications, believed that she was entitled to be promoted.  It is time for us to bring this protracted, difficult, and costly (undoubtedly for both parties), litigation to an end.

Because Edwards has failed to present legally sufficient evidence that "the [Commission] in the past had subjected [her] to unlawful discriminatory treatment, that the [Commission] treated other, similarly situated persons not of [her] protected class more favorably, or that the [Commission] has discriminated against other members of [her] protected class or other protected categories of persons," we find that no material issue of fact exists

17

as to whether the adverse employment actions taken by the Commission were motivated by racial animus.

## MOTION TO SUPPLEMENT SUMMARY JUDGMENT RECORD WITH AFTER-ACQUIRED EVIDENCE

Plaintiff seeks leave of this Court to add the deposition testimony of Ronald Frank, taken in reference to a different civil matter, into the record for this Court to consider with regard to the summary judgment motion.

We will deny Plaintiff's Motion to Supplement the Summary Judgment Record With After-Acquired Evidence.

In so doing, we note that Plaintiff brought this motion several months after discovery had closed and several months after Defendant's Motion for Summary Judgment had been filed. Moreover, even if we would have granted Plaintiff's motion, our ruling with respect to the Motion for Summary Judgment would not have changed. We would have treated the statements allegedly made by McCool as stray remarks, and for the same reasons as stated previously, those statements would not have affected the Court's final determinations.

18

17:35 OCT 23, 2002  TO: MARTIN L. WEINBERG  FR: SCAN31     #26571  PAGE: 20/20

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Plaintiff's Motion to Supplement Summary Judgment Record With After-Acquired Evidence (doc. 37) is denied.

2. Defendant's Motion for Summary Judgment (doc. 26) is granted.

3. The Clerk is directed to close the file on this case.

John E. Jones III
United States District Judge