

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HARRY E. WILLIAMS, JR.,** : | **CIVIL NO.1:CV-01-0877** |
| **Plaintiff** : | |
| v. : | |
| **PENNSYLVANIA TURNPIKE** : | |
| **COMMISSION,** : | |
| **Defendant** : | |



# MEMORANDUM

Before the court is Defendant's motion for summary judgment. The parties have briefed the issues, and the motion is ripe for disposition.

**I.      Background**

Plaintiff, Harry Williams Jr., filed this suit alleging violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e *as amended*. Defendant is the Pennsylvania Turnpike Commission, Plaintiff's employer. Plaintiff filed this action on May 18, 2001, and Defendant filed the instant motion for summary judgment on August 30, 2002. The following facts are undisputed unless otherwise noted.

On February 2, 1981, Plaintiff was hired as a "Radio Operator I" in the Turnpike Commission's Communications Center. Radio Operator I is a union position governed by the Commission's collective bargaining agreement ("CBA"). As a Radio Operator I, Plaintiff's primary duties included changing audio tapes used to record telephone conversations, monitoring weather reports, learning how to answer the phone, and placing emergency phone calls when necessary.

In 1996, Plaintiff bid on a vacancy for a "Radio Operator II" position. Like the Radio Operator I position, the Radio Operator II vacancy was a union position. Therefore, the hiring for that position would be accomplished in accordance with the CBA. Because Plaintiff was the most senior applicant, Plaintiff received the promotion pursuant to the terms of the CBA. As a Radio Operator II, Plaintiff performed more or less the same job he performed as a Radio Operator I. Although the Radio Operator II position included some supervisory responsbility, it did not give Plaintiff the power to discipline, hire or fire employees; thus, distinguishing it from a managerial position. All radio operators report directly to a duty officer. That position is considered a non-union management position because it involves significant supervisory responsibilities. Because it is not a union position, an applicant's seniority is irrelevant to hiring decisions for Duty Officer vacancies.

The duty officer position was created in 1997. At that time, Ronald Frank was employed as the Communications Center Manager. In this position, Frank reported directly to Joseph McCool, the Director of Safety and Operations. Initially, the Commission hired four Duty Officers: Gregory Rausch, Angela Rudy, David Dombrowski, and Joseph Sullivan. In March of 1999, Frank was demoted to a duty officer position, and Sullivan replaced him as the Communications Center Manager.

Pursuant to the Commission's written policy for promoting employees, interested candidates must present a written application to the Commission's Human Resources Department ("Human Resources") no later than the last day listed on the posting announcing a vacancy. Once it receives an application, Human Resources

sends the applicant an acknowledgment indicating that it is in possession of the application. This same policy also requires that any applicant who does not receive such an acknowledgment, despite the fact that he or she submitted an application, has an affirmative duty to contact Human Resources and determine why no acknowledgment has been sent. After all applications are received, Human Resources determines which applicants meet the minimum educational, experience, and training requirements for the vacancy. Once this determination is made, Human Resources forwards the applications of the minimally qualified candidates on to the deputy executive director of the department which has the vacancy. The deputy executive director of the department in question picks a panel of his management subordinates to interview all qualified candidates. All interviewees are required to complete an instructional course on interviewing prior to their panel interview. The panel asks all interviewees the same job-related questions. After the interview is completed, the panel meets to discuss the interviews. It then presents its recommendations to the department manager who then, subject to the approval of the department's deputy executive director, presents the panel's recommendations to the Salary Administration Committee.

      In April of 1999, the Turnpike Commission posted a vacancy notice for three duty officer positions. On April 23, 1999, Plaintiff submitted his application. Consistent with its policy, Human Resources mailed Plaintiff an acknowledgment that it had received his application. Additionally, Human Resources determined that Plaintiff met the minimum education and training requirements for the job. Human Resources then forwarded Plaintiff's application – along with those of the other minimally qualified candidates – to John Martino, the Acting Deputy Director of

Customer Service. Martino, presumably, assembled the following individuals to conduct the panel interview: (1) Joseph Sullivan, the Communications Center Manager; (2) Joseph Rispoli, the Safety Manager; and (3) William Capone, the Director of Marketing. This panel interviewed five candidates, including Plaintiff, for the three duty officer openings. Despite a requirement that all duty officers be able to type at least thirty-five words per minute, Human Resources did not administer a typing test to any of the candidates for the April 1999 posting.

After the interview process concluded, the panel recommended Fred Jumper and Dale G. Wickard be hired as duty officers. The panel did not recommend a candidate for the third position. At his deposition, when asked why Jumper and Wickard were chosen over Plaintiff, Capone testified as follows:

> A:  I felt, my personal – I'm just giving you my personal view at the time. Again, based on my understanding of the duties and responsibilities of this new position, it was clear to me that it required individuals that had strong management and decision-making, leadership skills. And I felt that, based on my interaction with [Jumper] over the years, you know, as a senior duty officer and enough time spent in the OP Center and based on personal observation, that I felt he possessed those skills.
>
> Q:  Okay. And Dale Wickard?
>
> A:  The same thing would apply. Again, I've interacted with Dale on many occasions, you know, observed him, you know, in the OP Center. I felt he possessed the skills that I previously mentioned.

(Capone Depo. at p. 24, lns. 4-18.)

When asked why the panel did not select Plaintiff for the third duty officer position, Capone testified as follows: ". . . I didn't believe that [Plaintiff] possessed the skills that I mentioned previously that I felt were essential to successfully performing the duties of the operation center duty officer." (*Id.* at p.

4

29, lns. 11-14.) Additionally, both Capone and Rispoli believed that Plaintiff lacked sufficient computer experience to properly perform the tasks of a duty officer. (*See id.* at p. 33, lns. 15-21; *see also* Rispoli Depo. at pp. 37-38.)

On July 28, 1999, the Turnpike Commission posted another vacancy for a duty officer position. Plaintiff contends that he submitted an application for this position. (*See* Pl. Resp. to Def. Stat. Mat. Facts at ¶ 65.) However, it is uncontested that Human Resources never sent Plaintiff an acknowledgment that it had received Plaintiff's application. Plaintiff failed to inform Human Resources of this fact, despite his affirmative duty to do so under the Turnpike Commission's written policy. The Turnpike Commission contends that Plaintiff did not submit an application. (*See* Def. Stat. Mat. Facts at ¶¶ 61-65.) Plaintiff, however, contends that he sent the application and that his name was not included on the list of minimally qualified candidates because the Turnpike Commission intentionally disregarded his application. (*See* Pl. Resp. to Def. Stat. Mat. Facts at ¶¶ 63, 65.) Ultimately, the Turnpike Commission selected Diane Jordan to fill the duty officer vacancy.

In May of 2000, McCool resigned from the Turnpike Commission. Between McCool's resignation in May of 2000 and the appointment of his replacement in March or April of 2001, Greg Richards functioned as the acting Director of Safety and Operations. In this capacity, Richards decided that it was time to "raise the bar for duty officers with not only [] training, but also ability to interface with the computer, ability to type for the purpose of getting the reports accurate and quick because that's essential." (Richards Depo. at p. 18 lns. 7-11.) To this end, the Turnpike Commission began to implement a typing test to

5

minimally qualified candidates. If an otherwise qualified candidate for a duty officer position failed to type thirty-five words per minute that candidate would not be interviewed for the position. This had been a requirement for duty officers since the creation of the position in 1997. (*See* Def. Mot. for Sum. J. at Ex. N.) However, the requirement had not been enforced during the interviews for duty officer vacancies in 1999. Daniel Bretzman, a duty officer, indicated that this directive has been consistently enforced since at least November 17, 2000; the day he joined the Commission's management team. (*See* Bretzman Depo. at p. 28.)

On November 28, 2000, the Turnpike Commission posted yet another vacancy for a duty officer position. Plaintiff submitted an application to Human Resources on December 11, 2000. Consistent with its policy, Human Resources sent a confirmation to Plaintiff, dated January 5, 2001, that it had received Plaintiff's application. As with the April 1999 vacancy, Human Resources classified Plaintiff as minimally qualified for the position. Human Resources classified two other candidates as minimally qualified as well. All three candidates, including Plaintiff, took a typing test. The Turnpike Commission contends that the other two candidates passed the test by typing over thirty-five words per minute. (*See* Def. Stat. Mat. Facts 79; *see also* Def. Mot. for Sum. J. Ex. Z.) Plaintiff, however, failed the typing test because he could only type twenty-nine words per minute. (*See id.*) Plaintiff, however, contends that the tests were scored incorrectly because Human Resources failed to take into account the other two candidates' errors in accuracy. (*See* Pl. Resp. to Def. Stat. Mat. Facts at ¶¶ 78-80.) In any event, the Turnpike Commission interviewed the other two minimally qualified candidates. Plaintiff,

however, was not interviewed. Ultimately, the Turnpike Commission selected Todd Leiss for the duty officer position.

Plaintiff filed the instant suit on May 18, 2001. The suit alleges that the Turnpike Commission did not promote Plaintiff to a duty officer position in retaliation for Plaintiff having supported his co-worker, Teresa Edwards's, discrimination suit against the Turnpike Commission.[1] On August 30, 2002, the Turnpike Commission filed the instant motion for summary judgment.

## II.        **Legal Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party.

---

[1] The complaint also alleges that the failure to promote was the result of gender discrimination. Plaintiff, however, consistently refers to his claim as one for retaliatory discharge. Plaintiff makes no mention of gender discrimination despite the fact that the Turnpike Commission addressed this claim in its motion for summary judgment. (*See* Def. Br. in Sup. Mot. Sum. J. at 8 n.3.) Accordingly, the court finds that Plaintiff has waived his gender discrimination claim by failing to present argument as to that issue. *Cf. Pennsylvania Dept. of Pub. Welfare v. United States HHS*, 101 F.3d 939, 945 (3d Cir. 1996) (noting that passing references, unaccompanied by substantive argument, will not suffice to bring an issue before the court); *United States v. Callwood*, 66 F.3d 1110, 1115 n.6 (10th Cir. 1995) ("A litigant who mentions a point in passing but fails to press it 'by supporting it with pertinent authority . . . forfeits the point.'" (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990)); *Mueller v. CBS*, 200 F.R.D. 227, 234 (W.D. Pa. 2001) (holding that the court will not do the lawyers' work for them and a lawyer who fails to press a point forfeits the point).

*Id.* at 249.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in his complaint; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial."  *Id.*

**III.**     **<u>Discussion</u>**

In his complaint, Plaintiff alleges that the Turnpike Commission violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964.  *See* 42 U.S.C. § 2000e *et seq.*  Specifically, Plaintiff alleges that the Turnpike Commission refused to promote him to a duty officer position because he supported Teresa Edwards's discrimination suit against the Commission.

Title VII cases are governed by the familiar burden shifting analysis promulgated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  This analysis first requires that the plaintiff establish a prima facie case of discrimination, or, in this case retaliation.  *See id.*  Once the plaintiff

establishes the prima facie case, the employer must articulate some legitimate non-discriminatory reason for its adverse employment action. *See id.* If the employer offers some evidence of such a justification, the plaintiff must demonstrate that the stated reason for the adverse employment decision was a pretext for discrimination or retaliation. *See id.* at 804.

Title VII prohibits an employer from "discriminat[ing] against an[ ] . . . employee[ ] . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie claim of Title VII retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) that the employer took adverse action against him; and (3) that a causal link exists between the protected activity and the employer's adverse action. *Weston v. Commonwealth*, 251 F.3d 420, 430 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000); *Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

For purposes of the instant motion, the Turnpike Commission has conceded that Plaintiff has produced evidence establishing a prima facie case of retaliation. Instead, the Commission argues that it has provided evidence indicating legitimate non-discriminatory reasons for not promoting Plaintiff. Additionally, the Commission contends that Plaintiff has failed to adduce sufficient evidence to create an issue of material fact regarding whether it is more likely than not that retaliation was the true reason why Plaintiff was not promoted. Because the court finds that there is a genuine issue of material fact regarding whether the Turnpike Commission retaliated against Plaintiff by not promoting him in April of 1999, the court will

deny, in part, the instant motion. However, the undisputed facts indicate that the Turnpike Commission is entitled to judgment as a matter of law on Plaintiff's claim that the Commission retaliated against him by not promoting him in July of 1999 and November of 2000. Accordingly, insofar as Plaintiff claims retaliation based on those incidents, the court will grant the Turnpike Commission's motion.

### A.  The April 1999 Posting

As to the April 1999 duty officer posting, the Turnpike Commission contends that it did not promote Plaintiff because he lacked the essential leadership skills for the position. In support of this contention, the Turnpike Commission points to the deposition testimony of Capone and Rispoli which is consistent with this assertion. These gentlemen, along with Sullivan constituted the interview panel in April of 1999.[2] Additionally, the Turnpike Commission notes that the documentation regarding the panel's recommended action is consistent with the testimony of its members.

The court finds this evidence sufficient to satisfy the Turnpike Commission's burden of production as to its reasons for not promoting Plaintiff in response to the April 1999 duty officer posting. The burden now shifts to Plaintiff to demonstrate that the Commission's proffered justifications are merely pretexts for retaliation. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). At this point, a plaintiff may defeat a motion for summary judgment by pointing to some evidence, direct or circumstantial, from which a fact-finder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious retaliatory reason was more likely than not a motivating or determinative

---

[2] Mr. Sullivan is deceased.

cause of the employer's action. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *see also Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 413 (3d Cir. 1999). At this stage, a plaintiff cannot simply assert that the defendant's proffered reason is insincere. Instead, he must point to some inconsistencies or contradictions in the defendant's reason indicating that it was "so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d. Cir. 1997).

    Plaintiff contends that the following accusations give rise to a finding of pretext. First, McCool told Ronald Frank to tell Plaintiff that he was jeopardizing his career with the Turnpike Commission by supporting Teresa Edwards's discrimination case. (*See* Frank Depo. at pp. 32-33 ("Q: And Mr. McCool told you that because Harry was supporting Terry Edwards he was jeopardizing his chance to become a duty officer? A: That's correct.").) Second, Sullivan instructed Frank, on several occasions, to warn Plaintiff that his career would be in jeopardy if he continued to support Teresa Edwards. (*See id.* at pp. 30-31 (". . . Mr. Sullivan had talked to me at least twice that I could [sic] remember about the situation with Harry getting involved in the middle of Ms. Edwards' problems with the Commission. . . . [Sullivan] did tell me that, to warn Harry to stay out of the middle of it.").) Third, although Human Resources qualified five individuals as meeting the minimal qualifications for the three vacancies, the Commission only chose to fill two of those vacancies.[3]

---

[3]Plaintiff also contends that the fact he was the most senior among the five minimally qualified applicants demonstrates pretext. The court disagrees. The duty officer position is a management position. Therefore, unlike union positions, seniority is not taken into consideration when making hiring decisions for management positions.

11

Defendants argue that McCool's comments cannot create a genuine issue of material fact because they constitute stray remarks by a non-decision maker. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992). Despite Plaintiff's contention to the contrary, the court finds that McCool's statement to Frank are irrelevant. McCool was not on the interview panel, nor was the decision to hire Jumper and Wickard subject to his approval. Instead, the interview panel consisted of Sullivan, Rispoli and Capone. These three individuals jointly came to the conclusion that Plaintiff was not qualified for the position. Their decision was subject to John Martino's approval in his capacity as the acting Deputy Director of Customer Service. In short, there is no evidence linking McCool to the decision not to promote Plaintiff. Consequently, his statements regarding how Plaintiff's support for Teresa Edwards would affect Plaintiff's career are immaterial and will not support a finding of pretext.

On the other hand, Sullivan was a member of the interview panel. His statements to Frank, therefore, have direct bearing on the issue. If the jury were to believe Frank's testimony that Sullivan instructed him to warn Plaintiff that his support for Edwards could adversely affect his eligibility for promotion, it would not be unreasonable for the jury to conclude that the Commission's proffered reason for not promoting Plaintiff is a pretext contrived to mask its retaliatory motive.

The Turnpike Commission does not address the effect of Sullivan's statement. Instead, it contends that "there is no evidence the panel ever considered Plaintiff's relationship with Edwards when making its decision." (Def. Br. in Sup. Mot. for Sum. J. at 14.) At the summary judgment stage, however, the court's duty is to determine whether a genuine issue of material fact exits which would require a

trial. *See* Fed. R. Civ. P. 56. In making this determination, it is to resolve all genuine issues of fact in favor of the non-moving party; in this case, Plaintiff. *Gans v. Mundy*, 762 F.2d at 341. Because Plaintiff has presented evidence which, if believed, would tend to prove that Plaintiff was not promoted in April of 1999 because he supported Edwards, a genuine dispute of material fact exists. Therefore, granting summary judgment would be inappropriate.

      **B.**    **The July 1999 Posting**

As to the July 1999 posting, the Turnpike Commission contends that it did not promote Plaintiff because he failed to apply for the position. It is undisputed that Human Resources never sent Plaintiff an acknowledgment that it had received an application from him for this position. If Plaintiff never applied for this position, then certainly this would be a legitimate non-retaliatory reason for not offering Plaintiff the position. Therefore, the court finds that this satisfies the Turnpike Commission's burden of production as to the July 1999 posting. Thus, the burden shifts to Plaintiff to demonstrate that the Commission's contention is a pretext for retaliation. *See St. Mary's Honor Ctr.*, 509 U.S. at 515.

To support a finding of pretext as to the July 1999 posting, Plaintiff simply claims that he applied for the position, but the Turnpike Commission intentionally omitted his name from the list of minimally qualified candidates. Plaintiff, however, points to no evidence – besides his own assertion that he submitted an application – to support such a contention. Moreover, he fails to address the fact that he did not notify Human Resources that he did not receive an acknowledgment of his application. Plus, the other two times that Plaintiff applied for a duty officer vacancy, Human Resources provided Plaintiff with an

13

acknowledgment that it had received his application. Pursuant to the Turnpike Commission's written policy, Plaintiff was required to notify Human Resources that he did not receive an acknowledgment. Therefore, he is now estopped from contending that he applied for the position. In any event, even if the jury were to believe Plaintiff that he submitted an application for this posting, it would not change the result. Without more, this would simply indicate that Plaintiff applied for the position, but the application was misplaced. Because Plaintiff failed to notify Human Resources that he had not received an acknowledgment, no reasonable jury could conclude, as Plaintiff contends, that Human Resources intentionally disregarded his application.

In summation, Plaintiff simply has not adduced any evidence indicating that retaliation was the real motivation behind Plaintiff not receiving a promotion in July of 1999. Accordingly, the court will grant the Turnpike Commission's motion for summary judgment as it relates to the failure to promote Plaintiff in response to the July 1999 duty officer posting.

    C.    **<u>The November 2000 Posting</u>**

As to the November 2000 posting, the Turnpike Commission contends that Plaintiff was not promoted because he failed a typing test. The undisputed facts indicate that all three minimally qualified candidates took the test to demonstrate whether they could type at a speed of thrity-five words per minute, as required by the duty officer job description. The other two candidates scored 35.2 and 37.0 words per minute, while Plaintiff scored 29.1 words per minute. Thus, the other two candidates were interviewed for the position. Because Plaintiff failed the test, the panel did not interview him. Once again, this satisfies the Turnpike Commission's

14

burden of production. The burden now shifts to Plaintiff to demonstrate that this reasoning is a pretext for retaliation. *See id.*

In support of a finding of pretext, Plaintiff makes two principal arguments: (1) typing speed was a requirement for the position all along; and (2) an examination of the typing tests reveals that the scorers failed to take into account the other two candidates' accuracy errors in scoring the tests. The court, however, finds that neither of these contentions has merit, and Plaintiff has failed to otherwise provide evidence that would call into question the legitimacy of the Turnpike Commission's proffered reason for not promoting Plaintiff in November of 2000.

As to Plaintiff's first contention, the court fails to see its relevance. It is undisputed that the typing requirement was required of all duty officers, but that the test was only implemented for the November 2000 vacancy. This fact, however, is completely consistent with Greg Richards's statement that he wanted to raise the bar for duty officer applicants. Moreover, all three minimally qualified applicants took the test. There is no evidence that the Commission singled out Plaintiff.

Likewise, the court fails to see the relevance of whether the people scoring the typing tests made an error in scoring. Plaintiff's burden at this stage is to not only demonstrate that the Turnpike Commission's stated reason for not promoting Plaintiff was wrong, but that it was "so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d at 1109. Plaintiff has failed to meet this burden. Plaintiff is correct that there are errors in accuracy on the other candidate's tests that the scorers failed to take into account. However, there is at least one error in accuracy in Plaintiff's test that the scorers failed to count against him. (*See* Def. Mot. for Sum. J. at Ex. Z (Plaintiff

omits an "of" in the following sentence: "Once we get in the habit of coasting, the habit gets us.") Additionally, the court does not know how the test scorers wanted to account for such errors. Finally, neither McCool, nor Sullivan – the two people that Plaintiff contends threatened his career if he continued to engage in protected activity – were with the Turnpike Commission by this time period.

No reasonable juror could conclude that the Turnpike Commission retaliated against Plaintiff based on the lone fact that the other two candidates' typing tests have unaccounted for errors in accuracy where Plaintiff also had at least one uncounted error. Accordingly, the court will grant the Turnpike Commission's motion for summary judgment as it relates to the November 2000 posting.

### D.  Punitive Damages

Although Plaintiff's complaint does not specifically state a claim for punitive damages, the Turnpike Commission seeks a finding that Plaintiff is precluded from seeking such damages. Punitive damages are not available in Title VII suits brought against governments and their agencies. *See* 42 U.S.C. § 1981a(b)(1). The Turnpike Commission is an agency of the Commonwealth of Pennsylvania pursuant to Pennsylvania law. *See* 42 Pa. Cons. Stat. § 102. Therefore, the court will preclude Plaintiff from recovering punitive damages in this case.

### IV.  Conclusion

In accordance with the foregoing discussion, the court will grant, in part, and deny, in part, the Turnpike Commission's motion for summary judgment. The motion will be denied as to Plaintiff's claim that the Commission retaliated

16

against him by not promoting him in response to the April 1999 duty officer posting. The court, however, will grant the Turnpike Commission's motion as it relates to the July 1999 and November 2000 duty officer postings. An appropriate order will issue.

SYLVIA H. RAMBO
United States District Judge

Dated: January 22, 2003.