# ORIGINAL
NONC to U

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY E. WILLIAMS, JR., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:CV 01-0877 |
| | : | |
| v. | : | (Judge Rambo) |
| | : | |
| PENNSYLVANIA TURNPIKE | : | |
| COMMISSION, | : | |
| | : | |
| Defendant. | : | |

FILED

JUN 1 7 2003

MARY E. D'ANDREA, CLERK
PER _____ HBG, PA DEPUTY CLER

### DEFENDANT PENNSYLVANIA TURNPIKE COMMISSION'S
### RESPONSE TO PLAINTIFF'S POST TRIAL MOTIONS

## I.   INTRODUCTION

On April 15, 2003, the jury in this case unanimously answered "no" to the

following question:

> Did Plaintiff prove, by a preponderance of the evidence, that
> he was not promoted to a Duty Officer position in June of
> 1999 because he assisted another co-worker in pursuing a
> racial discrimination claim?

On April 16, 2003, the Court entered an Order in favor of the Defendant,

Pennsylvania Turnpike Commission and against the Plaintiff, Harry E. Williams, Jr.

Plaintiff now has filed post-trial motions addressing two distinct issues: (1)

whether the verdict form submitted to the jury was proper; and (2) whether the Court

erred in quashing the subpoena of Joseph McCool. As neither contention is

meritorious, Plaintiff's motions should be denied in their entirety.


**II.** **ARGUMENT**

  **A.** **The Verdict Form Submitted To The Jury Was Proper.**

  In his Brief In Support of Plaintiff's Post-Trial motions, plaintiff argues that the

Court erred in submitting to the jury a verdict form asking if Plaintiff proved, by a

preponderance of the evidence, that he was not promoted to a Duty Officer position in

June of 1999 because he *assisted* another co-worker in pursuing a racial discrimination

claim. Plaintiff's entire argument here is simply that the phrase "assisted another co-

worker in pursuing a racial discrimination claim" should have been replaced with

language stating that he was retaliated against for "opposing acts and/or practices made

unlawful by Title VII."[1]

  Plaintiff submits that the language of the verdict form "caused a verdict to be

returned against him" in that the jury "returned a verdict against Plaintiff on a factual

determination made from an improper legal frame of reference." (See Plaintiff's

Memorandum at p. 3). Plaintiff's theory is misguided for several reasons, not the least

of which is that the verdict form accurately reflected his burden in this matter.

---

[1] During trial, Plaintiff's counsel requested that the verdict form be amended to read
that Plaintiff was not promoted because he "opposed alleged practices against another
co-worker, Terri Edwards." (N.T. p. 319).

As a preliminary matter, Defendant submits that the language requested by Plaintiff and the language contained on the verdict form are substantially identical -- thus making Plaintiff's motion on this issue meritless.

A new trial is appropriate only when "the verdict is contrary to the great weight of the evidence or errors at trial produce a result inconsistent with substantial justice." *Roebuck v. Drexel Univ.,* 852 F.2d 715, 735-36 (3d Cir. 1988). When the basis of the motion for a new trial involves matters within the sound discretion of the trial court, such as, *inter alia*, points of charge, the trial court has wide latitude in ruling on the motion. *Link v. Mercedez-Benz of N. Am., Inc.*, 788 F.2d 918, 921-22 (3d Cir. 1986).

As a general rule, a trial court has broad discretion in the formulation and utilization of verdict forms, and, as such, a reviewing court's inquiry is normally limited to an abuse of discretion standard. *Moore's Federal Practice*, 3d ed. (1999); *see also, Greenleaf v. Garlock, Inc.* 174 F.3d 352 (3d Cir. 1999).[2]

Courts must be reluctant to reverse a jury verdict and must review jury instructions "as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis for aiding the jury in reaching its decision." *Swans v. City of Lansing*, 65 F. Supp.2d 625 (W.D. Mich. 1998) (*citing*

---

[2] Comparatively, jury instructions are generally reviewed for abuse of discretion, but where the issue is whether the instruction mistakes the law, the review is plenary. *Walden v. Georgia-Pacific, Corp.,* 126 F.3d 506 (3rd Cir. 1997). While the language here is not exactly what Plaintiff requested, it does <u>not</u> misstate the law, and, therefore, review should be for abuse of discretion.

*O-So Detroit, Inc. v. Home Ins. Co.,* 973 F.2d 498, 502 (6th Cir. 1992)).  Similarly, as to any alleged errors in a verdict form, a new trial would be warranted only if the questions "mislead or confuse the jury, or if they inaccurately frame the issues to be resolved by the jury." *Vichare v. AMBAC, Inc.*, 106 F.3d 457, 465 (2d Cir. 1996).

Importantly, the verdict form is not to be considered in a vacuum; rather, it must be read in conjunction with the judge's charge to the jury. *Spruill v. Winner Ford of Dover, Ltd.,* No. CIV.A. 94-685 MMS, 1998 WL 186906, (D. Del. Apr. 6, 1998) (*citing Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 121 (1963)(holding verdict form must be analyzed in the context of the instructions); *see also, Vichare* 106 F.3d at 466; *Roberts v. Roadway Express, Inc.,* 149 F.3d 1098 (10th Cir. 1998)(court unable to address appeal regarding sufficiency of verdict form where record did not include jury instructions – which must be read in conjunction with jury verdict form).

In this case, the verdict form, especially when viewed in light of the extensive jury instructions given by the Court (which were also provided to the jury for review throughout deliberations (N.T. at p. 320)) establishes that the Court properly framed the issues for the jury.  The jury could not have been confused or misled in making its decision in this case.  Rather, the jury verdict form, in conjunction with the jury instructions, clearly and unambiguously explained to the jury the exact legal standard on which the jury was to make its determination:

4

Now the Plaintiff alleges that the Defendant Pennsylvania Turnpike Commission retaliated against him for having opposed alleged discriminatory actions that Plaintiff believed Defendant took with respect to another employee.

. . . .

Specifically, Plaintiff claims that he did not receive a promotion to the position of Duty Officer in 1999 because he voiced his opposition to the Turnpike Commission's treatment of Plaintiff's coworker Terri Edwards

. . . .

The applicable provision of [Title VII] states: Quote – it shall be [an] unlawful employment practice for an employer to discriminate against any of his employees because the employee has opposed any practice made unlawful by this subchapter – end quote.

. . . .

Thus Title VII prohibits an employer from retaliating against an employee because that employee opposed a discriminatory employment practice *or assisted* or participated in an investigation or proceeding involving a claim of employment discrimination.

. . . .

Now a person who opposes acts or practices directed at a coworker that may be unlawful under Title VII is engaged in activity protected under Title VII.  Thus a person has engaged in protected activity when he or she opposes discrimination based on a protected category such as race.

. . . .

5

> In this case, Plaintiff contends that he engaged in protected
> activity by opposing alleged acts and practices unlawful
> under Title VII.

(N.T. at pp. 309-311) (emphasis added).

The jury verdict form used in the instant case, alone, clearly was not misleading or confusing in any respect but especially so when read in conjunction with the Court's detailed jury instructions. On the contrary, the jury verdict form, accurately and unambiguously set forth the correct legal standard for the jury to consider.

Plaintiff's argument here is really a distinction without a difference in that the Plaintiff's only alleged protected activity in this case (and the only evidence submitted by Plaintiff) was that Plaintiff claimed to have assisted his coworker, Terri Edwards, with respect to her claims of race discrimination. In fact, Plaintiff's counsel acknowledged as much during his closing argument during which he stated that this case is about "giving someone assistance or however you want to characterize it, because of her race." (N.T. at p. 287). Mr. Ostrowski continued, specifically discussing the jury verdict form, "[w]e are going to ask you after you say yes that he was not promoted to the Duty Officer because he assisted another coworker in pursuing a discrimination claim, that answer is yes." (N.T. at p. 292).

6

Since Plaintiff's only alleged protected activity in this case is that he somehow assisted Terri Edwards, the Court's verdict form and jury instructions were an accurate recitation of the law.[3]

## B.    The Court Properly Granted Mr. McCool's Motion To Quash.

Plaintiff also argues that the Court erred in granting Mr. McCool's Motion to Quash Plaintiff's subpoena attempting to compel Mr. McCool's attendance at trial.  A review of the record, however, clearly establishes that Plaintiff failed to tender the necessary witness fee and mileage allowance (plus tolls) -- despite being given every opportunity by the Court.

Specifically, on April 2, 2003, Plaintiff attempted to serve Mr. McCool (a former employee of Defendant) with a subpoena compelling his attendance at trial. The next day, Mr. McCool filed a Motion to Quash, arguing that Plaintiff had failed to tender him the necessary witness fee and mileage.  By Order dated April 7, 2003, the Court denied Mr. McCool's Motion, but at the same time, specifically noted that since Plaintiff did not demonstrate to the Court that he had prepaid the witness fee and mileage to Mr. McCool, the Court would entertain a renewed motion by Mr. McCool if

---

[3] Notably, the Court decided that if [Plaintiff] had actually engaged in the activity of assisting Terri Edwards, that that would have been protected activity – but that it was up to the jury to determine if he actually engaged in that activity. (N.T. at p. 278). There was no discussion of any other alleged protected activity, and thus there was no reason to present any other question to the jury on the verdict form.

Plaintiff failed to provide the appropriate fee and mileage by Friday, April 11, 2003 at 10:00 a.m. (trial in this matter began Monday, April 14, 2003).

On April 11, 2003, McCool renewed his Motion to Quash, indicating that Plaintiff had still failed to tender the necessary witness fee and mileage allowance. Also on that date, Plaintiff provided proof that he had paid Mr. McCool $100.00 to cover the witness fee and mileage.

On April 15, the Court properly granted Mr. McCool's Motion -- noting that the $100.00 tendered by Plaintiff was insufficient since Mr. McCool lived 115 miles from the Federal Courthouse – thus requiring a $40.00 witness fee plus $82.80 for the mileage allowance required under 28 U.S.C. § 1821(c) for a total amount owed of $122.81, plus tolls.

Rule 45 of the Federal Rules of Civil Procedure is very clear, "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and, if the person's attendance is commanded, **by tendering to that person the fees for one days' attendance and the mileage allowed by law."** Since Plaintiff failed to tender the appropriate fee and mileage, the Court properly quashed the subpoena. There was no abuse of discretion.

Further, to the extent Plaintiff argues that he was severely prejudiced by the Court's decision to quash the McCool subpoena, the Court had already determined, in granting Defendant's Motion *in Limine,* that Mr. McCool's statements were

8

inadmissible under Section 403 of the Federal Rules of Evidence.  Since Plaintiff has

not appealed that decision, he has waived that issue on appeal and, therefore, his

concerns about the subpoena, even if true, would be, at best, harmless error.

## III.    CONCLUSION

For all of these reasons, Plaintiff's Post Trial Motions should be denied.


Respectfully submitted,


MARVIN L. WEINBERG, ESQUIRE
JOHN C. ROMEO, ESQUIRE
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA  19103
(215) 299-2706

Attorneys for Defendant,
Pennsylvania Turnpike Commission

Dated:  June 16, 2003

9

## CERTIFICATE OF SERVICE

I, John C. Romeo, hereby certify that a true and correct copy of the foregoing

Motion was served upon counsel for Plaintiff first class mail on the 16th day of June,

2003.

John C. Romeo, Esquire

Dated:  June 16, 2003